```
                    FILED
            CLERK, U.S. DISTRICT COURT

                 NOV 20 2024

          CENTRAL DISTRICT OF CALIFORNIA
          BY: _____rsm_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>PHILLIPS 66 COMPANY,<br><br>　　　　Defendant. | 2:24-CR-00699-JFW<br><br>I N D I C T M E N T<br><br>[33 U.S.C. §§ 1317(d), 1319(c)(1)(A),(2)(A): Clean Water Act Violations-Negligent and Knowing Violations of Local Pretreatment Program Requirements and Federal Pretreatment Standards] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.　<u>The Defendant</u>

1.　Defendant PHILLIPS 66 COMPANY ("PHILLIPS") was a publicly traded company that was headquartered in Houston, Texas, and conducted business in the Central District of California and elsewhere.

2.　Defendant PHILLIPS operated oil refinery facilities in Carson and Wilmington, California, in Los Angeles County, within the Central District of California, at which defendant PHILLIPS processed

crude oil into various finished products such as gasoline and other fuels.

B. <u>The Federal Clean Water Act</u>

3. The Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, also known as the Clean Water Act (the "CWA"), established a statutory and regulatory scheme with the objective of restoring and maintaining the chemical, physical, and biological integrity of the waters of the United States.

4. The CWA prohibited the owner or operator of any source of pollutants from introducing such pollutants into a municipal sewage system in violation of pretreatment standards under the CWA.

5. "Pollutant" meant, among other things, chemical and industrial waste. 33 U.S.C. § 1362(6).

6. "Owner or operator" was defined as "any person who owns, leases, operates, controls, or supervises a source." 33 U.S.C. § 1316(a)(4).

7. Pursuant to the CWA, 33 U.S.C. §§ 1317(b)&(c), the United States Environmental Protection Agency ("EPA") promulgated National Pretreatment Standards for industrial sources of wastewater, such as petroleum refineries, which discharge to Publicly Owned Treatment Works ("POTWs").

8. POTWs were public facilities such as sewage treatment plants that treated municipal sewage or industrial waste. The term "POTWs" included sewers, trunk sewers, pipes, or other conveyances that led to sewage treatment plants.

9. Industrial waste dischargers, such as petroleum refineries like defendant PHILLIPS, were required to pretreat their wastewater before discharging it to a POTW in order to comply with the National

Pretreatment Standards.  33 U.S.C. §§ 1317 (b), (d); 40 C.F.R. Part 403, § 403.1 *et seq.*

10.  "Pretreatment" included the reduction of the amount of pollutants, the elimination of certain pollutants, or the alteration of the nature of pollutant properties in wastewater before discharging such pollutants into a POTW.  40 C.F.R. § 403.3(s).  Pretreatment standards were designed to ensure that industrial users discharged into the sewer system wastewater which the POTW can effectively process and treat.  40 C.F.R. § 403.2.

11.  Specific numerical limits had been set by EPA for discharges by categories of industrial users which were determined to be the most significant sources of pollution.  40 C.F.R. Part 403, *et seq.*  These standards were commonly referred to as "categorical standards," and operations subject to such standards were commonly referred to as categorical industrial users.  Among the promulgated categorical standards were those covering petroleum refineries, such as defendant PHILLIPS' oil refinery facility located in Carson, California (the "PHILLIPS' Carson Facility").  40 C.F.R. Part 419.

12.  The daily maximum concentration of oil and grease in wastewater that a petroleum refinery, such as defendant PHILLIPS' Carson Facility, could discharge to a POTW must not exceed 100 milligrams per liter ("mg/L") of oil and grease.  40 C.F.R. §§ 419.15 and 419.17.

13.  EPA promulgated monitoring and reporting regulations that required categorical dischargers to submit periodic reports, submit reports of specific discharges, and monitor and analyze discharges.  40 C.F.R. § 403.12.

14. The National Pretreatment Standards, categorical standards, and local pretreatment program requirements were enforceable under the CWA. 33 U.S.C. §§ 1317(d), 1319(c).

15. The National Pretreatment Standards prohibited the discharge of industrial wastewater into a POTW in violation of specific prohibitions or limits developed by the local POTW (e.g., wastewater ordinances). 40 C.F.R. § 403.5(d).

16. Under the CWA, a violation of any requirement imposed in a pretreatment program approved under 33 U.S.C. §§ 1342(a)(3) or (b)(8) was a violation of the CWA. 33 U.S.C. § 1319(c).

17. The Los Angeles County Sanitation Districts had a pretreatment program that was approved under 33 U.S.C. § 1342(b)(8) and 40 C.F.R. § 403.8.

C.  <u>The Los Angeles County Sanitation Districts</u>

18. The Los Angeles County Sanitation Districts (the "LACSD") was a public agency that managed the collection, treatment, and disposal of waste, including industrial wastewater containing pollutants.

19. The LACSD operated POTWs where wastewater discharged by industrial users was treated through various processes for reuse or discharge to the waters of the United States.

20. The LACSD operated a POTW in Carson, California, called the Joint Water Pollution Control Plant (the "JWPCP"), which received and treated wastewater from industrial users through a sewerage system. Industrial wastewater discharged into the LACSD's sewerage system by defendant PHILLIPS' Carson Facility, namely, into a LACSD trunk sewer, was received and treated by the JWPCP. 40 C.F.R. § 403.3(q).

D. <u>The LACSD's JWPCP</u>

21. The LACSD's JWPCP, a POTW, was designed to handle 400 million gallons of wastewater per day. The JWPCP was a treatment plant that accepted municipal and industrial waste. Municipal waste being sanitary waste from residential homes and industrial waste being wastewater from industrial dischargers, such as defendant PHILLIPS' Carson Facility.

22. The JWPCP was designed to remove sanitary and organic waste, as opposed to removing chemical and other industrial waste. The LACSD required industrial dischargers, such as defendant PHILLIPS' Carson Facility, to have a pretreatment compliance program. The LACSD reviewed and approved pretreatment compliance programs as part of its permitting process.

23. The JWPCP performed primary and secondary treatment of wastewater. Primary treatment consisted of a physical process where solids were settled out and removed from the water before being sent to an anerobic digestor. Primary treatment removed approximately 70% of solid waste matter.

24. Secondary treatment consisted of a biological process which utilized naturally occurring microorganisms and high purity oxygen to treat wastewater to remove suspended solids. Secondary treatment removed about 98% of the solid waste matter.

25. To ensure that the JWPCP could appropriately treat the wastewater it received, the LACSD issued permits identifying the maximum quantity and concentration of pollutants (e.g., oil and grease) industrial wastewater could contain to be discharged to the JWPCP. Accordingly, if an industrial wastewater discharger, such as defendant PHILLIPS' Carson Facility, discharged wastewater containing

5

a concentration of oil and grease greater than its permit allotment, multiple locations at the JWPCP would be affected.

### E. The JWPCP's Lower Explosive Limit

26. In primary treatment, some, but not all, of the oil and grease would be separated alongside other solid waste. The solid waste and oil and grease would then combine before heading to the anerobic digestors which contained naturally occurring microorganisms living in controlled environments. Disturbing the microorganisms' controlled environment with excessive amounts of oil and grease can cause, and does cause, them to die which in turn affects the JWPCP's ability to dispose of solid waste.

27. The oil and grease that is not removed with the solid waste proceeds to secondary treatment, where it is more detrimental to the JWPCP's operations because it can cause a safety issue; oil and grease, which may contain methane, can combust, or explode, particularly when combined with a high purity oxygen environment.

28. If the JWPCP determined that the combustible gas level, or lower explosive limit ("LEL"), created a safety concern, the JWPCP would purge the system by lowering the purity of the oxygen in the microorganisms' controlled environment. Without a high purity oxygen environment, the microorganisms' ability to treat wastewater would be deteriorated; it could also lead to the microorganisms' death, which would compound the problem because their death would produce methane worsening the LEL concerns.

29. Industrial wastewater that does not have an excessive concentration of pollutants goes through primary treatment, secondary treatment, and ultimately disinfection before the water is discharged to the Pacific Ocean.

6

F. The LACSD's Pretreatment Program

30. As part of its pretreatment program, the LACSD adopted the Wastewater Ordinance on April 1, 1972, as amended on July 1, 1998, which sets forth various requirements under the LACSD's pretreatment program. Among other things, the Wastewater Ordinance required defendant PHILLIPS' Carson Facility to obtain and maintain a permit to discharge industrial wastewater to the LACSD's sewerage system and POTWs. The LACSD was authorized to issue permits to industrial users for the discharge of wastewater to the LACSD's POTWs pursuant to, and consistent with, the requirements of the LACSD's pretreatment program. If an industrial discharger violated its permit, the LACSD could issue the discharger a Notice of Violation ("NOV").

31. The LACSD issued an industrial wastewater discharge permit to defendant PHILLIPS for the PHILLIPS' Carson Facility on or about October 5, 2017, effective for a period of approximately five years (Permit No. 21079) (the "Wastewater Permit"). The Wastewater Permit, along with the LACSD's Wastewater Ordinance, set forth certain requirements that defendant PHILLIPS' Carson Facility was obligated to follow in accordance with the LACSD's pretreatment program (collectively, "LACSD's Pretreatment Program") in order to discharge industrial wastewater to facilities maintained by the LACSD, including the JWPCP and sewerage system conveying wastewater to the JWPCP.

G. Notification Requirements Under LACSD's Pretreatment Program

32. LACSD's Pretreatment Program for defendant PHILLIPS' Carson Facility set forth specific limits for certain prohibited or restricted wastes, such as a maximum concentration of 75 mg/L for oil

7

and grease, that could be contained in the industrial wastewater that defendant PHILLIPS discharged to LACSD.

33. In the event of a discharge by defendant PHILLIPS' Carson Facility of industrial wastewater containing any prohibited waste or excessive quantities or concentrations of any restricted waste, LACSD's Pretreatment Program, such as paragraph 34 of the Wastewater Permit, required defendant PHILLIPS to immediately notify the LACSD by phone at any time of day or night.

34. The Wastewater Ordinance set forth certain prohibitions related to the discharge to the LACSD's facilities of industrial wastewater that contained certain prohibited waste or excess quantities of restricted waste. The Wastewater Ordinance required industrial users, such as defendant PHILLIPS, to immediately notify the LACSD of the discharge of any prohibited waste or of the discharge of excessive quantities or concentrations of any restricted waste.

35. Paragraph 34 of the Wastewater Permit required defendant PHILLIPS to immediately notify the LACSD of any circumstances that affected defendant PHILLIPS' Carson Facility's plant processes or facility operations that could potentially result in the discharge of prohibited or restricted wastes, including the malfunction, upset or improper operation of plant processes, pretreatment systems spill containment facilities, or diversion/bypass mechanisms.

36. The Wastewater Ordinance also required industrial users, such as defendant PHILLIPS, to notify the LACSD of any circumstances that affected the industrial user's plant processes or facilities including the malfunction, upset or improper operation of the industrial user's plant processes, pretreatment systems, spill

8

containment facilities, or diversion or bypass of wastewater, that could, among other things, potentially result in the discharge of wastewater containing: (1) any prohibited waste or (2) excessive quantities or concentrations of any restricted wastes.

37. The Wastewater Ordinance required industrial users, such as defendant PHILLIPS' Carson Facility, to comply with applicable federal regulations.

### H. The Requirement to Have a Program of Regular Maintenance of Pretreatment Equipment

38. LACSD's Pretreatment Program, specifically paragraph 15 of the Wastewater Permit, required defendant PHILLIPS to have in place a program of regular pretreatment equipment maintenance and cleaning to prevent the build-up of grit, oil, or grease, or other prohibited materials which may enter the sewer and to ensure compliance with the permit. The Wastewater Permit also required defendant PHILLIPS to maintain an adequate supply of treatment chemicals as well as replacement parts for key components of defendant PHILLIPS' pretreatment system.

### I. The Requirement to Submit Engineering Drawings for Approval by the LACSD Prior to Implementing Changes

39. LACSD's Pretreatment Program, specifically paragraph 40 of the Wastewater Permit, required defendant PHILLIPS' Carson Facility to submit engineering drawings for approval by the LACSD prior to implementing changes in equipment or processes at PHILLIPS' Carson Facility.

  J. <u>Defendant PHILLIPS' Carson Facility's Discharge of Non-Compliant Industrial Wastewater on November 24, 2020</u>

40. On November 24, 2020, beginning at approximately 1:00 a.m. and ending at approximately 3:30 a.m., defendant PHILLIPS' Carson Facility discharged to the LACSD industrial wastewater containing a concentration of oil and grease as high as 24,700 mg/L, more than 300 times the concentration allowed in the Wastewater Permit. Defendant PHILLIPS' Carson Facility failed to inform the LACSD of its non-compliant industrial wastewater discharge.

41. During this approximately two-and-a-half-hour time period, the LACSD roughly estimated that defendant PHILLIPS' Carson Facility discharged approximately 310,000 gallons of non-compliant industrial wastewater, which contained approximately 64,000 lbs. of oil and grease, to LACSD's sewer system.

42. Defendant PHILLIPS' Carson Facility's industrial wastewater pretreatment system process controls and practices were inadequate to prevent or quickly address the non-compliant discharge.

43. On or about December 10, 2020, the LACSD issued defendant PHILLIPS' Carson Facility multiple NOVs for discharging industrial wastewater containing an excessive concentration of oil and grease, failing to inform the LACSD of said discharge of industrial wastewater, and for discharging industrial wastewater which adversely affected an LACSD POTW, namely, the JWPCP.

44. On or about January 5, 2021, the Manager of defendant PHILLIPS' Carson Facility's Environmental Services Department submitted a written response to the LACSD which, in summary, acknowledged its non-compliant industrial wastewater discharge and its failure to notify the LACSD of said discharge, and represented

that defendant PHILLIPS would "retrain operations personnel" on potential non-compliant discharge situations and the procedure to notify the LACSD of non-compliant discharges.

K.   Defendant PHILLIPS' Carson Facility's Discharge of Non-Compliant Industrial Wastewater on February 8, 2021

45.   On February 8, 2021, beginning at approximately 6:00 p.m. and ending at approximately 11:30 p.m., defendant PHILLIPS' Carson Facility discharged to the LACSD industrial wastewater containing a concentration of oil and grease higher than 75 mg/L.

46.   Defendant PHILLIPS' Carson Facility's industrial wastewater samples for February 8, 2021, between 6:00 p.m. and 12:00 a.m. (midnight), showed an oil layer floating atop the industrial wastewater:





11

47. The LACSD determined that the samples contained a concentration of oil and grease as high as 12,900 mg/L, more than 170 times the concentration allowed in the Wastewater Permit. Like with the November 24, 2020, non-compliant industrial wastewater discharge, defendant PHILLIPS' Carson Facility again failed to inform the LACSD of its non-compliant industrial wastewater discharge.

48. On February 8, 2021, between approximately 6:00 p.m. and midnight (12:00 a.m.), defendant PHILLIPS' Carson Facility discharged approximately 480,000 gallons of non-compliant industrial wastewater, which contained at least 33,700 lbs. of oil and grease, to LACSD's sewer system.

49. Defendant PHILLIPS' Carson Facility's non-compliant industrial wastewater discharge resulted in oil being sent to, and received by, the JWPCP:




50. On or about March 2, 2021, the LACSD issued defendant PHILLIPS' Carson Facility two NOVs for failing to notify the LACSD of an industrial wastewater discharge containing excessive quantities of restricted waste (i.e., oil and grease) and circumstances affecting plant processes or operations that could potentially result in

12

discharge of restricted waste, as well as for discharging industrial wastewater which adversely affected an LACSD POTW, namely, the JWPCP.

51. On or about March 9, 2021, the Manager of defendant PHILLIPS' Carson Facility's Environmental Services Department again submitted a written response to the LACSD to acknowledge its non-compliant industrial wastewater discharge and its failure to notify the LACSD of said discharge. The Manager also informed the LACSD that maintenance was ongoing on industrial wastewater pretreatment equipment, namely, an API Separator, to increase its effectiveness in skimming oil.

52. These Introductory Allegations are incorporated by reference into each count of this Indictment.

COUNT ONE

[33 U.S.C. §§ 1317(d), 1319(c)(1)(A)]

On or about November 24, 2020, in Los Angeles County, within the Central District of California, defendant PHILLIPS 66 COMPANY ("PHILLIPS"), the owner and operator of a source, operated the source such that defendant PHILLIPS' Carson Facility negligently discharged pollutants, namely, industrial wastewater containing an excessive quantity and concentration of oil and grease, from defendant PHILLIPS' Carson Facility into a publicly owned treatment works operated and maintained by the Los Angeles County Sanitation Districts ("LACSD"), in violation of a requirement in the LACSD's Pretreatment Program that wastewater not exceed a quantity and concentration of 75 milligrams per liter ("mg/L") of oil and grease, and in violation of a National Pretreatment Standard for petroleum refineries that wastewater not exceed a quantity and concentration of 100 mg/L of oil and grease, after the effective date of that standard.

## COUNT TWO

[33 U.S.C. § 1319(c)(1)(A)]

On or about November 24, 2020, in Los Angeles County, within the Central District of California, defendant PHILLIPS 66 COMPANY ("PHILLIPS"), the owner and operator of a source, operated the source such that defendant PHILLIPS' Carson Facility negligently failed to notify the Los Angeles County Sanitation Districts (the "LACSD") of a potential, or actual, discharge of wastewater containing an excessive quantity or concentration of any restricted waste, such as oil and grease, from defendant PHILLIPS' Carson Facility into a publicly owned treatment works operated and maintained by the LACSD, in violation of a requirement in the LACSD's Pretreatment Program.

COUNT THREE

[33 U.S.C. §§ 1317(d), 1319(c)(2)(A)]

On or about February 8, 2021, in Los Angeles County, within the Central District of California, defendant PHILLIPS 66 COMPANY ("PHILLIPS"), the owner and operator of a source, operated the source such that defendant PHILLIPS' Carson Facility knowingly discharged pollutants, namely, industrial wastewater containing an excessive quantity and concentration of oil and grease, from defendant PHILLIPS' Carson Facility into a publicly owned treatment works operated and maintained by the Los Angeles County Sanitation Districts ("LACSD"), in violation of a requirement in the LACSD's Pretreatment Program that wastewater not exceed a quantity and concentration of 75 milligrams per liter ("mg/L") of oil and grease, and in violation of a National Pretreatment Standard for petroleum refineries that wastewater not exceed a quantity and concentration of 100 mg/L of oil and grease, after the effective date of that standard.

COUNT FOUR

[33 U.S.C. § 1319(c)(2)(A)]

On or about February 8, 2021, in Los Angeles County, within the Central District of California, defendant PHILLIPS 66 COMPANY ("PHILLIPS"), the owner and operator of a source, operated the source such that defendant PHILLIPS' Carson Facility knowingly failed to notify the Los Angeles County Sanitation Districts (the "LACSD") of a potential, or actual, discharge of wastewater containing an excessive quantity or concentration of any restricted waste, such as oil and grease, from defendant PHILLIPS' Carson Facility into a publicly owned treatment works operated and maintained by the LACSD, in violation of a requirement in the LACSD's Pretreatment Program.

                                COUNT FIVE

                        [33 U.S.C. § 1319(c)(2)(A)]

   Beginning on an unknown date no later than September 2019 and ending no earlier than March 5, 2021, in Los Angeles County, within the Central District of California, defendant PHILLIPS 66 COMPANY ("PHILLIPS"), the owner and operator of a source, operated the source such that defendant PHILLIPS' Carson Facility knowingly failed to obtain the Los Angeles County Sanitation Districts' approval of a change in equipment or process prior to implementation, and knowingly failed to notify the Los Angeles County Sanitation Districts (the "LACSD") of circumstances affecting plant processes or facility operations that could potentially result in the discharge of prohibited or excessive quantities or concentrations of restricted wastes.  Specifically, defendant PHILLIPS failed to obtain approval and failed to notify LACSD of its practice of using only one API Separator instead of two in its wastewater pretreatment system at defendant PHILLIPS' Carson Facility, in violation of requirements in the LACSD's Pretreatment Program.

                              COUNT SIX

                       [33 U.S.C. § 1319(c)(2)(A)]

     Beginning on an unknown date no later than September 2019 and ending no earlier than March 5, 2021, in Los Angeles County, within the Central District of California, defendant PHILLIPS 66 COMPANY ("PHILLIPS"), the owner and operator of a source, operated the source such that defendant PHILLIPS' Carson Facility knowingly failed to adhere to and follow a program for regular pretreatment equipment maintenance and cleaning to prevent a build-up of grit, oil, or grease or other prohibited materials from entering a

//
//
//

1 publicly owned treatment works operated and maintained by the Los
2 Angeles County Sanitation Districts ("LACSD"), in violation of a
3 requirement in the LACSD's Pretreatment Program.

A TRUE BILL

/S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

MARK A. WILLIAMS
Assistant United States Attorney
Chief, Environmental Crimes and
Consumer Protection Section

DENNIS MITCHELL
Assistant United States Attorney
Deputy Chief, Environmental
Crimes and Consumer Protection
Section

JUAN M. RODRIGUEZ
Assistant United States Attorney
Public Corruption and Civil
Rights Section